Kevin L. WHITE and Jill L. White, Plaintiffs-
Respondents,†

v.

Franklin LEEDER, Defendant,

THRESHERMEN'S MUTUAL INS. CO.,
Defendant-Appellant.

Court of Appeals

*No. 87–1628. Submitted on briefs March 1, 1988.—Decided
April 6, 1988.*

(Also reported in 424 N.W.2d 722.)

---

† Petition to review pending. This petition was not disposed of
at the time the volume went to press. Its disposition will be reported
in a later volume.

For the plaintiffs-respondents the cause was submitted on the briefs of *Doar, Drill & Skow, S.C.* by *James A. Drill,* of New Richmond.

For the defendant-appellant the cause was submitted on the briefs of *Nowlan & Mouat* by *Richard E. Rosenberg,* of Janesville.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

MOSER, P.J.  Threshermen's Mutual Ins. Co. (Threshermen's), insurance carrier for Franklin Leeder (Leeder), appeals from a judgment awarding Kevin L. White (White) $91,391.32 in damages plus interest and costs. Threshermen's raises five issues on appeal: (1) whether Leeder's causal negligence can be established without the use of technical expert testimony; (2) whether the trial court erred in using Wis J I—Civil 1391 to establish a duty on the part of Leeder to protect White from harm; (3) whether there was any credible evidence of Leeder's causal negligence; (4) whether the trial court erred in its application of the absent witness instruction, Wis J I—Civil 410; and (5)

whether a new trial should be granted. Because we hold that the trial court's use of Wis J I—Civil 1391 was prejudicial error, we reverse and remand this case for a new trial on the issue of liability.

White was hired by Leeder on May 21, 1982, to be a herdsman on one of Leeder's two dairy farms. His duties included running the dairy farm and maintaining the cattle, buildings, land and equipment. Twice a day, White was required to milk the cows. The milking barn had forty-eight stanchions on which to secure a cow while it was being milked. Because there were fifty cows on the farm, White always left two cows outside the barn until stanchions became available.

In order to service the cows, Leeder kept a bull on the farm at all times. The bull was free to roam anywhere in the yard that the cows were allowed. This area included a "dry barn" which had no equipment or materials in it.

On April 2, 1983, White brought forty-eight of the cows into the milking barn for their morning milking. After some of the stanchions became available, White went outside to bring the other two cows in. He found the cows lying on the floor of the dry barn with the bull between them. Upon seeing White, the cows rose and began walking toward him to get to the milking barn. The bull also rose and began walking toward White. When White turned to watch the cows exit the barn, the bull butted him in the side, knocking him to the ground. When White got up and attempted to back out of the barn, the bull came at him again and butted him in the stomach, carrying him ten to fifteen feet into the yard. Because of this incident, White suffered serious injuries.

The first issue Threshermen's raises is whether technical expert testimony was necessary to establish causal negligence by Leeder. We hold that it was not.

■ Expert testimony is required only when the matter involved is not within the realm of the ordinary experience of mankind.[1] This requirement is an extraordinary one and is to be applied only when unusually complex or esoteric issues are before the jury.[2]

The issue involved in this case was whether the manner in which Leeder kept the bull negligently caused White's injuries. Testimony was given showing that Leeder knew that the bull may have had a worse disposition than an average bull. Although disputed, there was testimony that the bull had not had a ring in its nose even though such a ring may have prevented White's injuries. In addition, various witnesses suggested alternative measures which could have been taken with the bull to prevent an accident. For example, a chain could have been placed in the bull's nose ring to make the bull more docile and to provide an audible warning of the bull's actions, or the bull could have been kept in its own pen where the cows would be brought for servicing.

■ All the testimony at trial concerning the keeping of the bull was given by witnesses who had years of experience in dealing with cows, bulls and their dangerous propensities. Thus, the witnesses were qualified as lay experts to give their opinion as to the various alternatives available in caring for and keeping a bull.[3] With the various alternatives and testimo-

---

[1]*Netzel v. State Sand & Gravel Co.*, 51 Wis. 2d 1, 6, 186 N.W.2d 258, 261 (1971).

[2]*Id.* at 7, 186 N.W.2d at 262.

[3]*See Black v. General Elec. Co.*, 89 Wis. 2d 195, 212, 278 N.W.2d 224, 231 (Ct. App. 1979).

ny given to the jury, the issue was not so unusually complex or esoteric as to require technical expert testimony. Therefore, we hold that the testimony of the witnesses produced at trial was sufficient for the jury to decide the issue of Leeder's causal negligence.

Threshermen's next argues that the trial court erred in using Wis J I—Civil 1391 to establish a duty on the part of Leeder to protect White from the bull.

■

A trial court has broad discretion in instructing a jury and we will not reverse if the instruction as a whole communicates a correct statement of the law.[4] However, if the instruction is erroneous and probably misleads the jury, it is prejudicial and requires reversal.[5]

Wisconsin J I—Civil 1391 states:

> An owner (keeper) of [a bull] is deemed to be aware of the natural traits and habits which are usual to [a bull], and it is his duty to use ordinary care to restrain and control the animal so that it will not in the exercise of its natural traits and habits cause injury or damage to the person or property of another.
>
> In addition, if an owner (keeper) is aware or in the exercise of ordinary care should be aware that the animal possesses any unusual traits or habits that would be likely to result in injury or damage, then the owner (keeper) must use ordinary care to restrain the animal as necessary to prevent the injury or damage.

The trial court, in giving this instruction, initially determined that it was created to define a duty of the

---

[4]*Kerkman v. Hintz,* 138 Wis. 2d 131, 136, 406 N.W.2d 156, 158 (Ct. App. 1987), *aff'd, rev'd on other grounds,* 142 Wis. 2d 404, 418 N.W.2d 795 (1988).

[5]*Id.*

owner or keeper to protect third parties. The trial court ruled, however, that as between an owner and a keeper,[6] this instruction applies to create a duty of the owner to protect the keeper from harm. Thus, the trial court gave the instruction deleting the parenthetical referrals to the keeper. This was an incorrect statement of the law.

The trial court was correct in its determination that the instruction applies when a third party is injured. The instruction, however, does not apply when a keeper of a bull is injured because a keeper of a bull should know of any of the animal's traits and habits that the owner does. In such a case, an owner is subject only to an ordinary standard of care. Because the use of this instruction probably misled the jury as to Leeder's duty of care, it was prejudicial and the judgment must be reversed. We therefore reverse and remand the cause with directions to conduct a new trial on the issue of liability.[7]

Threshermen's next argues that there was insufficient evidence to find that Leeder was causally negligent for White's injuries. A jury verdict will be sustained if there is any evidence to support it, especially when the verdict has the trial court's approval.[8] The credibility and weight of individual testimony is left to the province of the jury.[9]

---

[6]There is no dispute that White was a "keeper" as that term is used in the instruction.

[7]Because Threshermen's does not dispute the amount of damages or the issue of medical causation, these issues should not be retried on remand.

[8]*Fehring v. Republic Ins. Co.*, 118 Wis. 2d 299, 305, 347 N.W.2d 595, 598 (1984).

[9]*Id.*

In reviewing the record, we are convinced that there was sufficient credible evidence to sustain the verdict under the instruction given. However, we are remanding this case for a new trial on Leeder's causal negligence. Therefore, we will not discuss the issue further.

Threshermen's next argues that the trial court improperly applied the absent witness instruction, Wis J I—Civil 410.[10] The trial court informed Threshermen's that if it refused to call as a witness a person who was present when the bull's nose was rung, the absent witness instruction would be given. After objection, Threshermen's called the witness. Whether the trial court's warning was improper is now moot since the witness was called and the instruction was not given. We therefore decline to address the issue.

Finally, Threshermen's asks for a new trial on the grounds that the verdict was contrary to the evidence. Since we are already remanding this case for a new trial on the issue of liability, we need not address Threshermen's arguments.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[10]The absent witness instruction states:

> If a party fails to call a material witness within its control, or whom it would be more natural for that party to call than the opposing party, and the party fails to give a satisfactory explanation for not calling the witness, then you may infer that the evidence which the witness would give would be unfavorable to the party who failed to call the witness.